IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JOSEPH PETER LEDEE,[1]          }
TDCJ-CDI No. 1262929,           }
        Petitioner,         }
v.                              }          CIVIL ACTION H-07-2504
                                }
NATHANIEL QUARTERMAN.,          }
        Respondent.        }

OPINION ON DISMISSAL

Petitioner Joseph Peter Le'Dee, an inmate incarcerated in the Texas Department of Criminal Justice–Correctional Institutions Division ('TDCJ-CID'), has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his felony conviction for aggravated assault. (Docket Entry No.1).  Respondent has filed a motion for summary judgment, seeking dismissal of the petition on the ground that petitioner failed to meet his burden of proof under 28 U.S.C. § 2254(d).  (Docket Entry No.12).  Petitioner has filed a response to the motion.  (Docket Entry No.13).  After considering all pleadings and the entire record, the Court will grant respondent's motion for summary judgment and dismiss this habeas petition.

I. BACKGROUND AND PROCEDURAL HISTORY

Petitioner was indicted by a Harris County, Texas grand jury of aggravated assault with a deadly weapon, namely, his hands or an unknown object, in cause number 980198. *Le'Dee v. State*, No.14-04-01018-CR, Clerk's Record, page 2.  A judge in the 228th Judicial District Court of Harris County heard evidence of the following, as summarized by the Fourteenth Court of Appeals for the State of Texas:

---

[1] The Court notes that petitioner spells his last name as "Le'Dee" in his pleadings but the State spells it as "Ledee" in state court records.  Because the Court references and often quotes the pleadings and state court records, the Court will use both spellings in the appropriate context.

1

The complainant, George Ledee, appellant's father, testified that on June 7, 2003, he heard his doorbell ring and saw appellant standing outside. Ledee opened the door and spoke to appellant in a friendly manner. Appellant had one hand behind his back and appeared to be holding something. Ledee told appellant that there was food on the stove if he wanted any. Ledee then turned his back to walk away. He felt something around his neck, 'like a wire or something,' but could not tell exactly what it was. Appellant choked Ledee for over fifteen seconds, during which Ledee could not breathe. Ledee struggled back, and appellant hit him in the mouth, knocking out at least nine of Ledee's teeth. Appellant hit Ledee again just below the eye and then forced him to the ground. With Ledee on the ground, appellant began kicking him, including in the eye. While he was kicking Ledee, appellant repeatedly asked 'Who did that to you?' and when Ledee responded with appellant's name, appellant would say 'No' and kick Ledee again. At one point, appellant went into the house and retrieved two bottles of liquor, which he made appellant [sic] drink.[2] Appellant again asked 'Who did that to you?' and when Ledee responded 'I don't know,' appellant stopped kicking him. Ledee then lost consciousness.

Ledee additionally testified that he permanently lost vision in one eye, had to have surgery for a broken nose, and received 37 or 47 stitches in his face. He also identified the cause of various injuries as shown on a photograph of himself taken after the attack, including a mark on his neck that he says was caused when appellant choked him with an object the identity of which he could not recall. Additionally, Ledee stated that after the incident he realized that his wallet and his car were missing.

Sheriff's Deputy Santos Torres testified that he was called to the scene of the attack and arrived while Ledee was in an ambulance. He described the blood-stained premises and Ledee's physical condition. He did not notice any marks on Ledee's neck. Ledee told Deputy Torres that he believed his attacker was appellant but that he could not be certain. Deputy Roberto Rincon testified that he talked to Ledee at the hospital after the attack. According to Rincon, Ledee at first seemed hesitant to name his attacker but eventually stated that it was appellant. Ledee appeared fearful during the interview. Deputy Lee Bumpers testified that he spoke to Ledee at a substation, and Ledee told him that his son had beaten him and that he was afraid that his son would return and kill him. Patrick Robbins testified that he was arrested in Ledee's vehicle on June 27, 2003, after having 'rented' it from appellant.

---

[2] Ledee testified that he tried to pass out and pretend that he was dead because petitioner was kicking him so hard. Then he realized petitioner was gone. He saw petitioner return shortly with two bottles of liquor, which petitioner "threw" in Ledee's mouth and made him drink. Petitioner then kicked Ledee again and asked who did this to you. Ledee said, "I don't know." Ledee then passed out. *Ledee v. State*, No.14-04-01018-CR, Reporter's Record, Volume 1, pages 79-80.

*Ledee v. State*, No.14-04-01018-CR, 2005 WL 3359714 at \*1 (Tex. App.–Houston [14th Dist. 2005, no pet.). The judge found him guilty as charged. *Id.* at \*2. Petitioner entered a plea of true to two punishment enhancement paragraphs and after finding evidence to support the pleas, the state district court sentenced petitioner to forty years confinement in TDCJ-CID. *Id.*, Clerk's Record at 129.

On direct appeal, petitioner challenged the legal and factual sufficiency of the evidence on the manner and means of the injury to sustain the conviction and complained that his trial counsel rendered constitutionally ineffective assistance of counsel. *Ledee*, 2005 WL 3359714 at \*1. The Fourteenth Court of Appeals found the evidence both legally and factually sufficient to support a finding that petitioner committed aggravated assault with a deadly weapon. *Id.* at \*2. The state intermediate court of appeals further found that petitioner's trial counsel was not ineffective because he did not move for a directed verdict. *Id*. at \*3. The state appellate court affirmed the judgment of the state district court. *Id.* Petitioner did not file a petition for discretionary review. (Docket Entry No.1).

In his state habeas application, petitioner complained that he was denied the effective assistance of counsel at trial and was denied a fair trial and a fair appeal because the State did not prove beyond a reasonable doubt that his hands and an unknown object were deadly weapons. *Ex parte Le'Dee*, Application No.67,821-01, pages 2-46. The state district court, sitting as a habeas court, entered specific fact findings with respect to petitioner's claims of ineffective assistance of counsel and concluded that petitioner failed to show that his trial counsel rendered constitutionally ineffective assistance of counsel and recommended that relief be denied. *Id.* at 75-78. The state habeas court further found that because petitioner failed to

raise on direct appeal his claims of trial and appellate error, he was procedurally barred from raising the claims in his state habeas application. *Id.* at 78. The Texas Court of Criminal Appeals denied the application without written order on the trial court's findings without a hearing. *Id.* at inside cover.

Petitioner seeks federal habeas relief on grounds that his trial counsel rendered constitutionally ineffective assistance of counsel by failing to (1) properly advise him on the consequences of not accepting the State's plea offer of twelve years; (2) file a motion for the appointment of a psychiatrist or psychologist in preparation of an affirmative defense of insanity or mental defect; and (c) adequately investigate his mental health history for mitigation of punishment. (Docket Entry No.1). He also complains that the state district court and state appellate court erred in finding sufficient evidence that his hands and an unknown object were a deadly weapon to support his conviction for aggravated assault. (*Id.*).

Respondent moves for summary judgment on grounds that petitioner has failed to meet his burden of proof under the Anti-Terrorism and Effective Death Penalty Act of 1996 ('AEDPA') and that his claims fail on the merits. (Docket Entry No.12). Respondent also contends that petitioner's claim regarding the deadly weapon finding is procedurally barred. (*Id.*).

## II. STANDARD OF REVIEW

In deciding a motion for summary judgment, a court must determine whether 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The moving party bears the initial burden of informing the court of the basis of the motion and identifying the portions of the

4

record demonstrating the absence of a genuine issue for trial. *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001); *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

Petitioner's federal habeas petition is subject to the provisions of the AEDPA, Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *Lindh v. Murphy*, 521 U.S. 320 (1997).  The AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

The petitioner retains the burden to prove that he is entitled to habeas corpus relief.  *Williams v. Taylor*, 529 U.S. 362 (2000).  In this case, petitioner presented claims in a state habeas corpus application, which the Texas Court of Criminal Appeals denied without written order.  As a matter of law, a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of a claim.  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)).  Therefore, only those claims properly raised by petitioner in his state application for habeas corpus relief have been adjudicated on the merits by the state courts.

Where a petitioner's claim has been adjudicated on the merits, section 2254(d) hold that this Court shall not grant relief unless the state court's adjudication:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams*, 529 U.S. at 411-13; *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  Courts are to review pure questions of law and mixed questions of law and fact under subsection (d)(1), and pure questions of fact under subsection (d)(2).  *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).

"The standard is one of objective reasonableness."  *Montoya*, 226 F.3d at 403-04 (quoting *Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring)).  Under this standard, a federal court's review is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning."  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (citing *Cruz v. Miller*, 255 F.3d 77, 86 (2nd Cir. 2001) (noting that even where a state court makes a mistake in its analysis, "we are determining the reasonableness of the state court's 'decision,' . . . not grading their papers").

A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 413.  A decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle. . . but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  To be unreasonable, the state decision must be more than

merely incorrect. *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). A reversal is not required unless "the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'" *Id.* Factual findings made by the state court in deciding a petitioner's claims are presumed correct, unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules. *Smith*, 311 F.3d at 668 (citing Rule 11 of the Rules Governing Section 554 Cases in District Courts). Therefore, section 2254 (e)(1), which mandates that findings of fact made by a state court are presumed correct, overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party. *Id.* Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Id.*

Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines*, 404 U.S. at 521. Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is

considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

## III. ANALYSIS

### A. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of trial counsel is measured by the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on an ineffective assistance of counsel claim, petitioner must establish that his counsel's performance was deficient and that the deficiency prejudiced his defense. *Ogan v. Cockrell*, 297 F.3d 349, 360 (5th Cir. 2002) (citing *Strickland*, 466 U.S. at 692). The failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

Counsel's performance is deficient when the representation falls below an objective standard of reasonableness. *Ogan*, 297 F.3d at 360. Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption" that "trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy." *West v. Johnson,* 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1993). Mere "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."

8

*Strickland*, 466 U.S. at 687-90.  A deficiency in counsel's performance, standing alone, does not equal ineffective assistance of counsel if no actual prejudice is demonstrated.

Counsel's deficient performance results in actual prejudice when a reasonable probability exists "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  Confidence in the outcome of the trial is undermined when counsel's deficient performance renders "the result of the trial unreliable or the proceeding fundamentally unfair." *Pratt v. Cain*, 142 F.3d 226, 232 (5th Cir. 1998) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Pratt*, 142 F.3d at 232 (quoting *Lockhart*, 506 U.S. at 372).

A claim of ineffective assistance of counsel presents a mixed question of law and fact.  *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001).  Because petitioner's ineffective-assistance claims were previously considered and rejected on state habeas corpus review, the state court's decision on those claims will be overturned only if it is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

## 1. Consequences of Rejecting State's Plea Offer

Petitioner claims that his trial counsel failed to advise him of the advantages and disadvantages of rejecting the State's plea offer of twelve years for the aggravated assault.

(Docket Entry No.1).  Petitioner claims that trial counsel did not fully explain that, if convicted, the minimum amount of time that petitioner would be required to serve would be twenty-five years.  (*Id.*).  In his Traverse to the Respondent's Answer, petitioner argues that "even if counsel did explain to petitioner Le'Dee the offers of a plea made by the state, counsel still did not lend Petitioner his professional advise [sic] based on the facts of this case of whether Le'Dee should have accepted the plea." (Docket Entry No.13).

Petitioner's trial counsel, Ricardo Rodriguez, attested by affidavit in state proceedings to the following, in pertinent part:

> Upon my appointment, I reviewed the State's prosecution file, informed Mr. Ledee of his rights and legal options, and discussed Mr. Ledee's version of the offense.  I read the police offense report verbatim in its entirety to Mr. Ledee.  In our discussions about his legal options, I informed Mr. Ledee of the consequences of pleading guilty with and without an agreed punishment recommendation.  I thoroughly explained the punishment range and the plea bargain offers made by the State.  I am confident that Mr. Ledee understood the consequences of pleading guilty.
>
> Throughout my representation, I extensively negotiated with the State concerning plea bargain offers.  At one point, I believe that the State made a plea bargain offer of 12 years in prison, which I conveyed to Mr. Ledee, who rejected this offer.  Mr. Ledee consistently said that he was innocent but that he was willing to accept a misdemeanor jail plea offer.  I informed Mr. Ledee that he was subject to a prison term of 25 years to a life sentence if he was convicted after a trial.  Nonetheless, Mr. Ledee rejected the State's offer and expressed a desire to proceed to trial if the State was unwilling to offer a misdemeanor jail plea bargain.

*Ex parte Le'Dee*, Application No.WR-67,821-01, page 71.  The state district court, sitting as a habeas court, found the facts asserted in Rodriguez's affidavit to be true and his affidavit credible. *Id.* at 75.  The state habeas court found that "Rodriguez informed applicant of the consequences of a guilty plea and the punishment range, specifically that he faced a prison term of 25 years to life and that the State had offered twelve years." *Id.* at 76.  The state habeas court further found that

10

"applicant rejected the State's offer and expressed a desire to proceed to trial if the State was unwilling to offer a misdemeanor jail plea bargain." *Id.* at 76-77. The state habeas court concluded as a matter of law, that petitioner failed to show that Rodriguez rendered constitutionally ineffective assistance of counsel; it also concluded that "[t]he totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of counsel in the primary case." *Id.* at 77-78. The Texas Court of Criminal Appeals denied the state habeas application without written order on the trial court's findings without a hearing. *Id.* at inside cover.

Petitioner presents nothing to overcome the factual findings and conclusions of law by the state habeas courts with respect to his claim that his trial counsel failed to advise him on the consequences of declining the State's plea offer.

### 2. Mental Health Investigation

Petitioner next contends the facts of this case show that he was either under the influence of narcotics or was suffering from a mental defect or disease at the time he attacked his father. (Docket Entry No.1). Based on this "obvious" fact, petitioner claims that trial counsel should have requested a competency and insanity evaluation to determine petitioner's psychological condition during trial and at the time of the aggravated assault. (*Id.*). Petitioner contends that had trial counsel filed a motion for a psychiatric or psychological examination, such examination would have provided support for the affirmative defense of not guilty by reason of insanity or mental defect. (*Id.*).

Petitioner further contends that trial counsel was "put on notice" of petitioner's mental health issues from petitioner's school history of special education classes and their

discussion of petitioner's prison record and assaultive behavior.  Petitioner claims that had trial counsel adequately investigated petitioner's mental health history, he could have argued that petitioner did not act deliberately when he assaulted his father.  (*Id.*).

Counsel "has a duty to make a reasonable investigation of the defendant's case or to make a reasonable decision that a particular investigation is unnecessary."  *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997).  "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. . . . In particular, what investigation decisions are reasonable depends critically on such information."  *Boyd v. Johnson*, 167 F.3d 907, 910 (5th Cir. 1999) (quoting *Strickland*, 466 U.S. at 688).   To determine the reasonableness of counsel's decision to limit the scope of his investigation under prevailing professional norms, the Court analyzes such conduct as follows:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, at 690-91.   Moreover, as with any ineffective assistance of counsel claim, the petitioner must prove that an alleged breach of his attorney's duty to investigate "resulted in an actual and substantial disadvantage to the course of his defense."  *Baldwin v. Maggio*, 704 F.2d 1325, 1333 (5th Cir. 1983).

Under federal and state law, a person is legally incompetent to stand trial if he does not have the capacity to understand the nature and object of the proceedings against him, to

consult with counsel, and assist in preparing his defense.  *McDaniel v. State*, 98 S.W.3d 704, 709 (Tex. Crim. App. 2003).  A seemingly irrational crime, without more, does not constitute notice that a defendant is incompetent to stand trial.  *Johnson v. Estelle*, 704 F.2d 232, 239 (5th Cir. 1983).  Based on Rodriguez's affidavit, the state habeas courts found that Rodriguez never observed anything in petitioner's speech, actions, or demeanor that would indicate that petitioner might be mentally incompetent.  *Ex parte Le'Dee*, Application No.WR-67,821-01, page 76. Petitioner presents nothing to overcome this finding and nothing to show that he was indeed incompetent to stand trial.

Moreover, petitioner must demonstrate a "reasonable probability" that he was incompetent "sufficient to undermine confidence in the outcome."  *Bouchillon v. Collins*, 907 F.2d 589, 595 (5th Cir. 1990) (quoting *Strickland*, 466 U.S. at 694).  Again, petitioner fails to show a reasonable probability that any alleged incompetency was sufficient to undermine the outcome of the trial.  Accordingly, petitioner's claim that his trial attorney rendered ineffective assistance of counsel because he did not request a competency hearing fails to satisfy the AEDPA standard that would entitle petitioner to federal habeas relief.

State law also provides that when a defendant asserts the affirmative defense of insanity, the essential question is whether at the time of the conduct charged, the defendant as a result of severe mental disease or defect, did not know the conduct was wrong.  TEX. PEN. CODE ANN. § 8.01(a) (Vernon 2003).  "The term 'mental disease or defect' does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."  *Id.*  The issue of insanity involves medical, legal, and ethical considerations.  *Bigby v. State*, 892 S.W.2d 864, 877 (Tex. Crim. App. 1994).  "An individual may be medically insane, yet legally retain criminal

responsibility for that crime where a mental condition does not prevent defendant from distinguishing right from wrong." *Reyna v. State*, 116 S.W.3d 362, 367 (Tex. App.—El Paso, 2003, pet.) (citing *Graham v. State*, 566 S.W.2d 941, 948 (Tex. Crim. App. 1978)).  A history of a mental illness alone is insufficient to warrant a mental health evaluation.  *Martinez v. Dretke*, 404 F.3d 878, 886 (5th Cir. 2005) (citing *Bouchillon*, 907 F.2d at 593).

Rodriguez attested, and the state habeas courts found, that nothing in counsel's interactions with petitioner or his mother put counsel on notice that petitioner did not know his conduct was wrong at the time of the offense or that any further inquiry into petitioner's mental health history was warranted.  *Ex parte Le'Dee*, Application No.WR-67,821-01, page 77. Attorney Rodriguez attested to the following, in pertinent part:

> During my investigation and trial preparation, I never became aware that Mr. Ledee had any prior history of mental illness or defect.  In my discussions with Mr. Ledee and his mother, I was never informed that Mr. Ledee had any prior mental health problem.  Throughout our discussions, Mr. Ledee expressed a complete understanding of the criminal proceedings, was able to convey a clear picture of the incident in question, and assisted me throughout the representation. I never observed anything in Mr. Ledee's speech, actions, or demeanor which could indicate that he might be mentally incompetent.  Throughout my representation, Mr. Ledee possessed a rational as well as a factual understanding of the charges against him.  Mr. Ledee was always willing and able to assist in his defense.
>
> Additionally, I was never made aware of any information from Mr. Ledee or any other source which might indicate that Mr. Ledee was insane at the time of the offense or that Mr. Ledee, at the time of offense, did not know that his actions were wrong.  As a result, I never filed any motion for the appointment of a psychiatrist or psychologist to examine Mr. Ledee for sanity or competency. Additionally, I never requested a competency trial or attempted to investigate or present a sanity defense.

*Id.* at 71-72.  Based on its findings from Rodriguez's affidavit, the state habeas courts concluded that petitioner failed to show that Rodriguez was ineffective for failing to file motions because he

failed to show that the requested motions had merit or would have changed the outcome of the trial. *Id*. at 77. The state habeas courts also concluded that the totality of the representation afforded petitioner was sufficient to protect his right to the reasonably effective assistance of counsel. *Id.* at 77-78.

Petitioner fails to show that even if trial counsel had moved for the appointment of a psychiatrist or psychologist, such motion would have been granted. Petitioner further fails to show that he would have been found incompetent to stand trial or legally insane at the time of the offense. Therefore, he fails to overcome the state habeas courts' factual findings and fails to show any basis for federal habeas relief on his claim that trial counsel did not conduct an adequate investigation and did not move for the appointment of a mental health provider.

### 3. Sufficiency of Evidence to Support Conviction on Manner and Means

As in his state habeas application, petitioner asserts in the pending petition that the state district court and the state intermediate appellate court abused their discretion by not requiring the State to prove beyond a reasonable doubt that petitioner's hands, or the unknown object, were, in fact, a deadly weapon in the manner and use of the hands or object. (Docket Entry No.1). Petitioner contends in both applications that the evidence does not establish that his hands or unknown object became deadly weapons in the manner of their use. (*Id.*).

Respondent contends the Court is barred from reviewing this claim because the state habeas courts found it to be procedurally barred under state law. (Docket Entry No.12). In general, federal courts may not review a state court decision that rests on an adequate and independent state procedural default unless the habeas petitioner shows "cause" for the default and "prejudice attributable thereto" or demonstrates that the failure to consider the federal claim will

result in a "fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989).  When the last state court to review a claim clearly and expressly states that its judgment rests on a procedural bar, the procedural default doctrine generally bars federal review. *See id.*; *Lowe v. Scott*, 48 F.3d 873, 875 (5th Cir. 1995).

In this case, the state habeas court, the last court to review the claim, held that petitioner's failure "to raise on direct appeal his instant claims of trial and appellate court error," constituted a procedural bar to raising the claim in his state habeas application. *Ex parte Le'Dee*, Application No. WR-67,821-01, page 78 (citing *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1998).  The Fifth Circuit has recognized the *Gardner* rule, *i.e.,* an applicant procedurally defaults a claim if he could have raised it on direct appeal, sets forth an adequate state ground capable of barring federal habeas review. *Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004).  *Compare Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004) (holding that denial without written order on state habeas application challenging sufficiency of evidence constitutes denial on procedural ground because sufficiency claim is not cognizable on habeas review).  On direct appeal, petitioner challenged the sufficiency of the evidence on the "manner and means" of injury to sustain the conviction; *Ledee v. State*, 2005 WL at *2; but he did not present the issue to the Texas Court of Criminal Appeals via a petition for discretionary review. Because he could have presented such issue on direct appeal to the Texas Court of Criminal Appeals, his sufficiency claim regarding manner and means to support his conviction is barred from state habeas review.  Moreover, absent a showing of cause and prejudice or a fundamental miscarriage of justice, petitioner's claim is also barred from federal habeas review. *Busby*, 359 F.3d at 718 (internal quotations omitted).

16

Petitioner has not addressed the issues of cause and prejudice or raised a claim of actual innocence in the pleadings filed in this Court; nor has he alleged facts that would support relief on either of these grounds.  Accordingly, the Court concludes that petitioner's claim that the trial and appellate courts failed to require the State to prove beyond a reasonable doubt that petitioner's hands and an unknown object were deadly weapons in the manner of their use is procedurally barred and not entitled to consideration on federal habeas review.

## IV. CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted).  Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001).  On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).  A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument.  *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  The

Court has determined that petitioner has not made a substantial showing of the denial of a constitutional right.  Therefore, a certificate of appealability from this decision will not issue.

V. CONCLUSION

Finding no unreasonable application of clearly established federal law in the record of the state habeas proceeding, the Court ORDERS the following:

1.   Respondent's motion for summary judgment (Docket Entry No.12) is GRANTED.

2.   Petitioner's petition for federal habeas relief is DENIED.

3.   A certificate of appealability is DENIED.

4.   This habeas action is DISMISSED with prejudice.

5.   All other pending motions, if any, are DENIED.

The Clerk will provide a copy to the parties.

SIGNED at Houston, Texas, this 24th day of September, 2008.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE